OPINION OF THE COURT
Victoria A. Graffeo, J.
Petitioner commenced this CPLR article 78 proceeding for an order annulling respondent’s April 16, 1997 denial of petitioner’s application for a use variance and compelling respondent to grant said application.
Petitioner, a communications venture, submitted an application for a special use permit pursuant to article 43 of the Town of Guilderland Zoning Law on June 25, 1996. The application, which included an Environmental Assessment Form (EAF) sought permission to construct a 100-foot personal communications services (PCS) monopole in a residential area of the Town of Guilderland, New York. On August 7, 1996, the Guilderland Zoning Board of Appeals (ZBA) conducted a public hearing with respect to the application. Petitioner produced propagation maps and other evidence which demonstrated a significant gap in coverage along Interstate 1-90 and the surrounding areas, including portions of Guilderland. Petitioner also provided an architectural drawing of the proposed pole and submitted an analysis indicating that the monopole would be visible to less than 1% of the Town. At the hearing, the ZBA requested further information from petitioner which was provided on August 15, 1996.
The ZBA continued the hearing on August 21,1996, at which time petitioner provided a property valuation study indicating that surrounding property values would not be affected by the proposal. On November 6, 1996, the ZBA conducted another hearing and voted to require petitioner to submit a Draft Environmental Impact Statement (DEIS). Petitioner submitted a DEIS on December 8, 1996, and it was accepted as complete by the ZBA on January 15,1997. Pursuant to New York State’s *876 State Environmental Quality Review Act (SEQRA), a period of public comment was held during which time two individuals expressed concerns. Petitioner responded to the two individuals’ concerns raised in the public comment period in its Final Environmental Impact Statement (FEIS).
On March 10, 1997, the Guilderland Town Board enacted a local law which prohibited the use of the site in question for telecommunications purposes. Petitioner was informed by ZBA that under the new law, a use variance was necessary. The FEIS indicated, among other things, that the proposed monopole would have a minimal impact on the character of the surrounding neighborhood. Accordingly, petitioner submitted an application for a use variance on March 27, 1997. Petitioner’s FEIS was accepted as complete by the ZBA on April 2, 1997.
Another public hearing was conducted on April 16, 1997 at which time petitioner provided testimony and other evidence with respect to its compelling need for the Guilderland site in question. In anticipation of this hearing, the ZBA notified 45 neighboring property owners of the public hearing, not one of whom spoke in opposition to the proposal. Moreover, evidence and expert testimony were presented by petitioner manifesting the fact that petitioner had considered numerous other sites which proved to be infeasible.
Pursuant to 6 NYCRR 617.6 (b) (3) (ii), the ZBA issued a SEQRA Findings Statement which declared, in pertinent part, that petitioner conducted an extensive review of alternatives but that they were infeasible. Moreover, the ZBA found that the proposed site would not adversely affect surrounding property values and that it avoided or minimized adverse environmental impacts to the maximum extent possible.
Thereafter, the ZBA denied petitioner’s application for a use variance and pronounced, as justification for its determination, that the disparity in coverage between the proposed site and the Byron Avenue water tower was not substantial, that the petitioner did not demonstrate any intent to comply with the Town ordinance in order to meet the test for a use variance, and that petitioner did not provide a proposal which would meet its requirements and the Town’s ordinance at any appropriately zoned site in the Town.
In opposition to petitioner’s petition, respondent now maintains that it was the opinion of the ZBA that there existed other more appropriately zoned sites which would fulfill petitioner’s requirements. Specifically, it is argued that a larger *877 tower (at least 180 feet) or two towers at another site was possible and, therefore, the proposed site was rejected.
In the rapidly growing field of telecommunications, it is critical to ensure that services are widely available and affordable. Although municipalities’ genuine concerns with respect to guarding against overly intrusive instruments of technology cannot be ignored, it is imperative that companies providing these services are not restricted in an unreasonable manner. The Court of Appeals decision in the seminal case, Matter of Cellular Tel. Co. v Rosenberg (82 NY2d 364), established the current requirements for the approval of use variances with respect to telecommunications towers. In that case, the Court found that providers of cellular telephone services must be deemed "public utilities” and, therefore, applications for use variances must be considered under the more lenient standard applicable to public utilities. This holding allows telecommunications companies to construct devices for the provision of services which are ordinarily prohibited pursuant to existing zoning laws. Hence, to obtain a use variance, the petitioner must demonstrate that the site is necessary to provide safe and adequate service and that there are compelling reasons, economic or otherwise, to obtain the variance. Moreover, where the burden on the community is minimal, " 'the showing required by the utility should be correspondingly reduced’ ” (supra, at 372, citing Matter of Consolidated Edison Co. v Hoffman, 43 NY2d 598, 611; see also, Matter of Cellular Tel. Co. v Meyer, 200 AD2d 743; Cellular Tel. Co. v Village of Tarrytown, 209 AD2d 57).
In the case at bar, it is undisputed that petitioner has established a compelling need to erect a tower in the vicinity of the proposed site to eliminate gaps in its cellular phone service. The record indicates that the utilization of the specific site in question is necessary since petitioner has manifested the fact that other sites were considered and found to be infeasible. Further, it is evident that the proposed site will result in a minimal intrusion into the community. (See, Matter of Cellular Tel. Co. v Meyer, 200 AD2d 743, supra.)
Respondent’s rather vague denial of petitioner’s application states that the disparity between the proposed site and the Byron Avenue water tower was not substantial. However, this conclusion is not supported by the record; petitioner specifically considered this site and found that in light of the tower’s height, it would only be able to place its antennas approximately 100 feet above the ground. Petitioner established *878 that although this site would provide some coverage, significant gaps would remain. The remainder of ZBA’s statement is a vague reference to petitioner’s inability to meet the test for a use variance. Moreover, respondent’s denial is somewhat of an enigma based on the fact that it is in complete contradiction to its SEQRA Findings Statement.
Respondent’s answer to the petition alludes to the possibility of erecting a pole at least 180 feet in height or erecting two towers at a different location. However, this rationale is conspicuously absent from the ZBA’s explanation for its denial and, therefore, was not a reason for the ZBA’s determination. In any event, these alternatives were addressed by petitioner and found to be impracticable.
It is also noted that the ZBA was in violation of the Federal Telecommunications Act of 1996 (Pub L 104-104), which was enacted to promote competition and reduce regulation in order to reduce prices and provide a higher quality of services for consumers. The Act, codified at 47 USC § 332 (c) (7), provides that a local government shall act on a request to construct a personal wireless service facility within a reasonable period of time. (See, Sprint Spectrum v Town of W. Seneca, 172 Misc 2d 287.) The ZBA took approximately 10 months before it ruled on petitioner’s application. Additionally, this court finds that respondent also failed to support its decision by substantial evidence contained in the record as mandated by 47 USC § 332 (c) (7).
In the instant case, this court finds that petitioner’s showing was sufficient to warrant the granting of its application and that respondent’s determination was arbitrary and capricious. Accordingly, respondent’s denial of petitioner’s application is annulled and vacated. Respondent is hereby directed to issue the variance applied for within 30 days of service of this order with notice of entry.